UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KHODARIUS THOMAS,

    Plaintiff,

v.

NORFOLK SOUTHERN CORP.,

    Defendant
_____ /

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**NATURE OF ACTION**

1. The Plaintiff, KHODARIUS THOMAS, brings this action against the Defendant, NORFOLK SOUTHERN CORPORATION for violations of the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109. Plaintiff alleges retaliation in the form of harassment, intimidation, termination of employment and other discriminatory and illegal acts by Defendant.

**JURISDICTION**

2. This Court has subject matter jurisdiction in this case pursuant to the Federal Rail Safety Act, 49 U.S.C. § 20109(d)(3) and 28 U.S.C. § 1331.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in this district and 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this district.

4. On May 28, 2022, Plaintiff timely filed an administrative claim under 49 U.S.C. § 20109 with the Occupational Safety and Health Administration's ("OSHA") Region IV office in Atlanta, Georgia. More than 210 days have elapsed without final decision. Plaintiff therefore exercises his right to file an original action *de novo* pursuant to 49 U.S.C. § 20109(d)(3).

## PARTIES

5. At all times material, the Defendant NORFOLK SOUTHERN CORPORATION (Hereafter "NS") was and is a rail carrier engaged in interstate commerce. Defendant maintains its corporate headquarters in Fulton County, Georgia.

6. The Plaintiff is a natural person residing in Henry County, Georgia. At all times material to this action, Plaintiff was employed by Defendant, NS, and working in Georgia as a track laborer.

## FACTUAL ALLEGATIONS

7. On November 4, 2021, Plaintiff was working on track maintenance on NS's railways from Andersonville, GA to Albany, GA.

8. James Morris, Plaintiff's immediate supervisor, was present on the job site and also working on track maintenance.

9. After receiving the first track authority for the section from Columbus Junction to Howard, Plaintiff had a job briefing with Mr. Morris.[1]

10. Later that afternoon, Plaintiff received the second track authority for Howard to the M287, at which point Plaintiff realized there was no track authority for the section between Howard and Howard, and immediately called Morris to report the lack of authority.

11. Mr. Morris had just proceeded through the area that lacked track authority when Plaintiff informed him of this violation and requested that it be submitted to the proper authorities. Morris indicated that he understood, had everything covered, agreed with Plaintiff's recommended course of action, said he would take care of it and ensure the violation was reported to the proper authorities.

---

[1] "Track Authority" is a clearance issued by NS dispatchers which ensures that maintenance crews will be protected from engines and cars operating on rails where crews are working.

12. Based upon Morris' numerous assurances, Plaintiff had a good faith belief that Morris would turn in the track time violation to the proper authorities at that time.

13. The following week Plaintiff went on vacation and returned to work on or about November 22, 2022.

14. Notably, upon his return from vacation, Plaintiff asked Morris to confirm whether he had turned in notice of the 11/4/21 track time violation, to which Morris said it was handled in-house, and that he did not have to turn it in because "I'm the big dog. I got this."

15. Having now discovered that Morris failed to report the track time violation to the proper authorities Plaintiff contacted Zaheer Bell, whom Plaintiff believed to be Morris' supervisor at the time, that very same day to report the 11/4/21 track time violation.

16. However, Bell did not answer Plaintiff's telephone call on November 22, 2021, the last day of the work week, and did not return his call thereafter.

17. In further effort to report the track time violation, Plaintiff sent a text message to Bell again seeking to report Morris' 11/4/21 track time violation, but no response was received from Bell.

18. Plaintiff then learned that Nathan Kronewitter had recently taken over for Bell as Morris' supervisor.

19. As such, Plaintiff contacted Kronewitter on November 22, 2021 in an attempt to report Morris' 11/4/21 track time violation.

20. However, Kronewitter did not answer Plaintiff's telephone call on November 22, 2021, and did not return his call thereafter.

21. The following day, November 23, 2021, Plaintiff again contacted Kronewitter and was able to report the track time violation that Morris himself should have reported on the day Plaintiff notified him of such.

22. On December 3, 2021, the day Morris returned from vacation, Plaintiff arrived at the depot in Fort Valley and was informed that he was being removed from service for allegedly delaying the notification process of the track time violation.

23. An investigative hearing was held on January 13, 2022.

24. On January 28, 2022, a letter was sent by NS to Plaintiff advising him of the outcome of the investigation and that he was being dismissed from service.

25. Plaintiff has now been deprived of gainful employment since December 3, 2021 as a direct result of NS's retaliatory conduct including improper discipline, reprimand, discrimination, and termination.

26. The Federal Rail Safety Act prohibits railroad carriers from "discharge[ing], demot[ing], suspend[ing], reprimand[ing], or in any other way discriminat[ing] against an employee for reporting, in good faith, a hazardous safety or security condition[.] 49 U.S.C. § 20109(a) and (b)(1)(A).

27. In this instance, Plaintiff engaged in protected activity when he reported in good faith a hazardous safety condition to his immediate supervisor, James Morris, regarding the track time violation.

28. Since the date of Plaintiff's report, NS has taken adverse action when it retaliated against Plaintiff by knowingly and willfully removing him from service and ultimately terminating his employment despite nearly twelve (12) years of dedicated service to the railroad.

29. Plaintiff's protected activity was a contributing factor in NS's decision to remove

him from service. In fact, Plaintiff's termination resulted directly from Plaintiff's protected activity.

30. NS has engaged in the precise type of retaliatory, discriminatory, and proscribed conduct that the FRSA expressly prohibits.

31. NS's acts are discriminatory and retaliatory and due exclusively to Plaintiff's good faith conduct of reporting a hazardous safety condition.

32. NS's decision to remove Plaintiff from service and ultimately terminate him was motivated, in whole or in part, by a scheme of retaliating against employees who report safety hazards, especially where it would cause delay to the railroad.

## CAUSE OF ACTION

33. The Plaintiff repeats and incorporates by reference herein all the foregoing paragraphs as if fully set forth.

34. The Federal Railroad Safety Act, in 49 U.S.C. § 20109(a)(4) and its implementing regulations at 29 CFR § 1982 *et seq.*, states that a railroad engaged in interstate commerce may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee who provides information to the rail carrier or Secretary of Transportation of a work-related personal injury.

35. NS knew that Plaintiff engaged in the protected activities as defined in 49 U.S.C. § 20109(a)(4) when Plaintiff notified his supervisor of the track authority violations.

36. NS retaliated against Plaintiff and subjected him to adverse actions subsequent to him engaging in the protected activities as defined in 49 U.S.C. § 20109(a)(4).

37. Plaintiff's engaging in the protected activities as defined in 49 U.S.C. § 20109(a)(4) was a contributing factor to the adverse actions lodged against Plaintiff.

## PRAYER FOR RELIEF

38. For these wrongs, Plaintiff specifically requests a judgment under 49 U.S.C. § 20109 for all relief appropriate under the circumstances, including but not limited to (a) compensatory damages including compensation for any special damages; (b) litigation costs including expert witness fees and reasonable attorney fees; and (c) punitive damages.

WHEREFORE, in order to encourage employees to freely report all injuries without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, the Plaintiff demands a Judgment under the Federal Railroad Safety Act for all relief necessary to make him whole, including but not limited to:

A. Expungement of all references to disciplinary action related to this matter;

B. Lost wages and pay benefits with interest;

C. Lost benefits with interest;

D. Compensatory damages for economic losses due to Defendant's conduct;

E. Compensatory damages for mental anguish and emotional distress due to Defendant's conduct;

F. The statutory maximum of punitive damages; and

G. Special damages for all litigation costs including expert witness fees and attorney fees.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: May 14, 2024

By:    */s/ Alisa D. Wilkes*
       Alisa D. Wilkes
       GA Bar No. 81747
       alisa@wilkesmee.com
       service@wilkesmee.com

       Lawrence A. Silverman
       GA Bar No. 646120
       larry@wilkesmee.com

       **WILKES & MEE, PLLC**
       13400 Sutton Park Dr. S. Suite 1204
       Jacksonville, FL 32224
       (904) 620-9545

       Attorneys for Plaintiff